**<u>EXHIBIT C</u>**

**(Rebuttal Letter - first 20 pages with balance redacted)**



**CONTACT**
Ashley H. Morgan

**TELEPHONE**
(202) 298-8750

**FACSIMILE**
(210) 745-4645

**E-MAIL**
amorgan@lilesparker.com

March 1, 2023

<u>**VIA FEDERAL EXPRESS AND EMAIL**</u>
**No. 7714 4800 3978**

Qlarant Integrity Solutions, LLC
Attn: Rebuttal and Suspension Department
14643 Dallas Parkway, Suite 400
Dallas, TX 75254

| | |
|---|---|
| **Re:** | **Rebuttal Statement – Notice of Suspension** |
| **Provider:** | **Curitec, LLC d/b/a Curitec HQ** |
| **Medicare ID:** | ███████ |
| **NPI:** | ███████ |
| **Reference:** | ███████████ |

To Whom it May Concern:

Our law firm, Liles Parker PLLC, represents Curitec, LLC, doing business as Curitec HQ (Curitec HQ) in connection with a suspension of Medicare payments imposed by Qlarant Integrity Solutions, LLC (Qlarant), a Unified Program Integrity Contractor (UPIC) working on behalf of the Centers for Medicare and Medicaid Services (CMS). An Appointment of Representative form is enclosed for your files. **Attachment A**. Curitec HQ received a Notice of Suspension from Qlarant dated February 8, 2023.  **Attachment B**. Curitec HQ received an extension to respond to this Notice of Suspension, making the new deadline to submit a rebuttal statement March 9, 2023. **Attachment C**. This correspondence and the associated attachments constitute Curitec HQ's timely rebuttal statement.

## I.    <u>Background:</u>

Qlarant suspended Curitec HQ's Medicare payments pursuant to 42 C.F.R. § 405.371(a)(2) effective February 7, 2023, based on *"credible allegations of fraud[,]"* specifically, *"that [Curitec HQ] misrepresented services billed to the Medicare program. More particularly, Curitec HQ billed for services that were not rendered or not rendered as billed, and captive audience billing (rendering supplies to beneficiaries in the same location such as a nursing facility)."* **Attachment B, p. 1**.  In support, Qlarant provided five sample claims as evidence of its findings. Curitec HQ immediately thereafter initiated an internal investigation of the five sample

Rebuttal Statement
March 1, 2023
Page 2 of 8

claims provided, and respectfully disagrees with Qlarant's position as described below. Curitec HQ reserves the right to supplement this rebuttal statement.

## II.   <u>Rebuttal to Qlarant's Notice of Suspension:</u>

### A.   <u>Sources for credible allegations of fraud were not provided by Qlarant.</u>

As set out in Qlarant's February 8th letter **(Attachment B)**, sources of credible allegations of fraud may include fraud hotline complaints, claims data mining, patterns identified through audits, civil false claims cases, and law enforcement investigations. Qlarant has not provided the underlying data or the complete medical review results. We requested this information through a Freedom of Information Act (FOIA) on February 10, 2023, and hereby reiterate our request for prompt disclosure.

### B.   <u>Response to Specific Claims Discussed in Suspension Notice</u>

In each of the five sample claims cited, Qlarant alleges, *"The documentation did not support that the wounds met the criteria for a qualifying wound as per Local Coverage Article."* **Attachment B at 1-2.** Curitec HQ reviewed the five samples provided by Qlarant and strongly disagrees with the allegations of fraud. Curitec HQ contends that the items were, in fact, medically necessary and appropriate. Finally, Curitec HQ disputes Qlarant's claims that the wounds at issue did not meet the criteria to qualify for coverage and payment.

### 1.   <u>The Claims at Issue Were During the Height of the COVID-19 Pandemic</u>.

As an initial matter, the time period at issue took place during the COVID-19 outbreak and pandemic, **(Attachment D, p. 7)**[1] during which, in addition to the great uncertainty for health care providers and suppliers, CMS was constantly revising waivers and coverage requirements for services rendered to Medicare beneficiaries. Further, there was an increased demand for medical care and a shortage of health care providers as a result of lockdowns, mandated quarantines, and illness. The increased demands and shortages across all industries resulted in supply chain shortages for many items. Nevertheless, Curitec HQ remained focused on delivering necessary DMEPOS items and meeting the challenges of healthcare transformation as implemented by CMS during this time-period in many underserved communities.

### 2.   <u>Previous TPE Results Demonstrate that Curitec HQ's Documentation was Sufficient to Support the Services Rendered.</u>

The purpose of TPE is to decrease provider burden, reduce appeals, and improve the medical review/education process. Medicare Program Integrity Manual Ch. 3 Sec. 3.2.5.  Curitec HQ successfully concluded two separate 2022 Targeted Probe and Educate (TPE) reviews in Region C. **Attachment E, 1-15**. Notably, the earlier TPE probed one of the Healthcare Common Procedure Coding System (HCPCS) Codes at issue in this suspension (A6199). **Attachment E,**

---

[1] The dates of service reviewed by Qlarant range from January – December 2020. A majority of these dates of service fall after March 2020, with many during COVID-19 spikes such as in July, September, October, November and December 2020.

Rebuttal Statement
March 1, 2023
Page 3 of 8

**p. 1**. Curitec HQ's error rate was low enough that it exited the TPE process for A6199 in the first round. **Attachment E, p. 5**. For the latter code (A6197), Curitec HQ satisfactory concluded the TPE process following the second round. **Attachment E, p. 10, 13**.

Additionally, Curitec HQ utilized the post-probe conference call procedure for both TPEs to ensure that it achieved enhanced medical necessity compliance, **(Attachment E, p. 1-15)** and conducted an in-depth review of the Local Coverage Determination (LCD) and Local Coverage Article (LCA).

Curitec HQ also recently exited TPE in Region A[2] **(Attachment E, p. 16-26)** which probed two codes at issue in the suspension, A6196 and A6212, as well A6197. Here again, Curitec HQ's error rate was low enough (17.06%) that it exited the process in the first round. **Attachment E, p. 20**.

Currently, Curitec HQ is in the first round of TPE in Region B for HCPCS A6196 and A6021 (which, again are both at issue in the suspension). **Attachment E, p. 29-36**. Curitec HQ has been submitting documentation in response to CGS's Additional Documentation Requests (ADRs) and is confident that it will successfully exit TPE in Region B after the first round.

> **3.** **Curitec HQ's Documentation Met the Requirements for Coverage and Payment and the Underlying Wounds Met the Criteria for Qualifying Wounds.**

There are eight HCPCS codes associated with the five sample claims cited in the suspension letter. Each code relates to surgical dressings, and CGS has issued guidance on these supplies through LCD L33831. Whether these surgical dressings were reasonable and necessary is based on the following criteria:

- <u>A4452 (Tape)</u>. Tape is covered when needed to hold on a wound cover, elastic roll gauze or non-elastic roll gauze. Tape change is determined by the frequency of change of the wound cover. Quantities of tape submitted must reasonably reflect the size of the wound cover being secured. Utilization per dressing change for wound covers measuring: (a) 16 square inches or less is up to 2 units; (b) 16 to 48 square inches, up to 3 units; and (c) greater than 48 square inches, up to 4 units.

- <u>A6010 and A6021 (Collagen Dressing or Wound Filling)</u>. A collagen-based dressing or wound filler is covered for full thickness wounds (e.g., stage 3 or 4 ulcers), wounds with light to moderate exudate, or wounds that have stalled or have not progressed toward a healing goal.

- <u>A6196 and A6199 (Alginate or Other Fiber Gelling Dressing)</u>. Alginate or other fiber gelling dressing covers are covered for moderately to highly exudative full thickness wounds (e.g., stage 3 or 4 ulcers); and alginate or other fiber gelling dressing fillers for moderately to highly exudative full thickness wound cavities (e.g., stage 3 or 4 ulcers). Dressing change is up to once per day. One wound cover sheet of the approximate size of the wound or up to 2 units of wound filler (1 unit = 6 inches of alginate or other fiber gelling dressing rope) is used at each dressing change.

---

[2] Noridian Healthcare Solutions is the Region A MAC.

**Liles Parker PLLC ● 2121 Wisconsin Ave. NW ● Suite 200 ● Washington, DC 20007**

Rebuttal Statement
March 1, 2023
Page 4 of 8

- <u>A6209, A6212, and A6219 (Foam Dressing or Wound Filler)</u>. Foam dressings are covered when used on full thickness wounds (e.g., stage 3 or 4 ulcers) with moderate to heavy exudate. Dressing change for a foam wound cover used as a primary dressing is up to 3 times per week. When a foam wound cover is used as a secondary dressing for wounds with very heavy exudate, dressing change is up to 3 times per week. Dressing change frequency for foam wound fillers is up to once per day.

Beyond the reasonable and necessary requirements, each claim must also include proper documentation. CGS elaborates on documentation requirements by way of LCA A55426. For the five sample claims at issue in this suspension, the required documentation must include: (1) a standard written order (SWO) / prescription and (2) proof of delivery.[3]

A SWO must contain all of the following elements:

(1) beneficiary's name or Medicare Beneficiary Identifier (MBI);
(2) order date;
(3) general description of the item;
(4) quantity to be dispensed, if applicable;
(5) treating practitioner's name or National Provider Identifier (NPI); and
(6) treating practitioner's signature.[4]

There are three acceptable methods of delivery: (1) delivery directly to the beneficiary or authorized representative, (2) delivery via shipping or delivery service; and (3) delivery of items to a nursing facility on behalf of the beneficiary.[5]

Finally, CGS has provided guidance on qualifying wounds by way of LCA A54563. This Article defines a qualifying wound as either of the following:

- A wound caused by, or treated by, a surgical procedure; or,
- After debridement of the wound, regardless of the debridement technique.

The surgical procedure or debridement must be performed by a treating practitioner or other healthcare professional to the extent permissible under state law. Debridement of a wound may be any type of debridement (examples given are not all-inclusive):

- Surgical (e.g., sharp instrument or laser).
- Mechanical (e.g., irrigation or wet-to-dry dressings).
- Chemical (e.g., topical application of enzymes) or
- Autolytic (e.g., application of occlusive dressings to an open wound).[6]

---

[3] Other documentation, such as a written order prior to delivery, face-to-face encounter, and a continued medical need, among other items, are not necessary for the claims at issue here. *See* LCA A55426.
[4] *See* LCA A55426.
[5] *See* LCA A55426.
[6] *See* LCA A54563.

**Liles Parker PLLC ● 2121 Wisconsin Ave. NW ● Suite 200 ● Washington, DC 20007**

Rebuttal Statement
March 1, 2023
Page 5 of 8

As set out below, each of the items in the claims identified by Qlarant met the outlined requirements in the LCD and LCAs.

**Claim No. ███████0000**

On ████████████, Stephanie McCain, FNP, ordered ████████████ ███ ████. On the date of service, ██████████ presented for follow-up care for ████████████. **Attachment E,** ████████████. Assessing the wound, Ms. McCain noted that there ████████████. *Id*. Ms. McCain ordered ████████████ ████████████ *Id*. This debridement resulted in a qualifying non-healing wound pursuant to the coverage requirements in LCD L33831.

Ms. McCain then ordered t████████████ This SWO set forth (1) the beneficiary's name (██████████), (2) order date (██████████), (3) general description of items, (4) quantity to be dispensed, (5) the practitioner's name (Stephanie McCain), and (6) included the practitioner's signature. **Attachment E,** ████████████. For items (3) and (4) specifically, this order included two wound coverings: ████████████ ████████████ ████████████ ████████████. The supplies were reasonable and necessary pursuant to LCD L33831 given ████████████, and the appropriate number of dressings were ordered. The documentation also reflects all three items shipped through third party delivery (Cardinal Health at-Home) and proof of delivery on ██████████, via FedEx directly to the beneficiary. **Attachment E,** ████████████. The supplies were properly documented on the HCFA 1500 claim form and the appropriate modifier (A1) was used since the dressings applied to only one wound.[7] **Attachment E,** ████████████.

**Claim No. ███████0000**

On ██████████, Audra Lewis, NP ordered ████████████ ████████████. On the date of service, ██████████ presented with a non-healing and ████████████. **Attachment E,** ████████████. Ms. Lewis assessed the wound and noted that there was a ████████████. *Id*. Ms. Lewis ordered █ ████████████ ████████████ ████████████ This debridement resulted in a qualifying non-healing wound pursuant to the coverage requirements in LCD L33831.

Ms. Lewis then ordered the requisite surgical dressings to treat the wound via a SWO. This SWO set forth (1) the beneficiary's name (██████████), (2) order date (██████████), (3) general description of items, (4) quantity to be dispensed, (5) the practitioner's name (Audra Lewis), and (6) included the practitioner's signature. **Attachment E,** ████████████. For items (3) and (4) specifically, this order included two wound coverings: ████████████ ████████████

---

[7] *See* LCA A54563.

**Liles Parker PLLC ● 2121 Wisconsin Ave. NW ● Suite 200 ● Washington, DC 20007**

Rebuttal Statement
March 1, 2023
Page 6 of 8

█████████████████████████████ Ms. Lewis also ordered ██
████████████████████████████ (████████████). *Id*. The supplies
were reasonable and necessary pursuant to LCD 33831 given ████████
████████████████. The documentation also reflects all three
items shipped through third party delivery (Cardinal Health at-Home) and proof of delivery on
████████████████, via FedEx directly to the beneficiary. **Attachment E, ████████████**. The
supplies were properly documented on the HCFA 1500 claim form and the appropriate modifier
(A1) was used since the dressings applied to ████████████.[8] **Attachment E, ████████████**.

**Claim No. █████████000**

On ████████████, Angel Vantine, NP ordered ████████████████ ████████. On
this date of service, ████████ presented with ████████████████████████
████████████████. **Attachment E, ████████████**. Ms. Vantine noted ████████
████████████████████████████████████. *Id*. Ms. Vantine ordered a
████████████████████████████████████████████
████████████████████████. This debridement resulted in a qualifying non-
healing wound pursuant to the coverage requirements in LCD L33831.

Ms. Vantine then ordered the requisite surgical dressings to treat the wound via a SWO.
This SWO set forth (1) the beneficiary's name (████████), (2) order date (████████), (3) general
description of items, (4) quantity to be dispensed, (5) the practitioner's name (Angel Vantine), and
(6) included the practitioner's signature. **Attachment E, ████████████**. For items (3) and (4)
specifically, this order included two wound coverings: ████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████. *Id*. The
supplies were reasonable and necessary pursuant to LCD 33831 given ████████████████
███████████████████████████████████████████d. The
documentation also reflects all four items shipped through third party delivery (Cardinal Health at-
Home) and proof of delivery on ████████████████, via FedEx directly to the beneficiary.
**Attachment E, ████████████**. The supplies were properly documented and coded on the
HCFA 1500 claim form. ████████████████ ████████, ████████.
███████████████████████████████████████████████
████████████████████████████████

**Claim No. █████████0000**

On ████████████, Dr. Danny Silver ordered ████████████████ ████████. On this
date of service, ████████ presented with ████████████████████
████████. **Attachment E, ████████████**. Dr. Silver further noted ████████
████████████████. *Id*. Dr. Silver ordered ████████████████████

---

[8] *See* LCA A54563.
[9] *See* LCA A52521.

**Liles Parker PLLC ● 2121 Wisconsin Ave. NW ● Suite 200 ● Washington, DC 20007**

Rebuttal Statement
March 1, 2023
Page 7 of 8

██████████████████████████████████

██████████████████████████████████████████████████████████████

█ This debridement resulted in a qualifying non-healing wound pursuant to the coverage requirements in LCD L33831.

Dr. Silver then ordered the requisite surgical dressings to treat the wound via a SWO. This SWO set forth (1) the beneficiary's name (███████), (2) order date (███████), (3) general description of items, (4) quantity to be dispensed, (5) the practitioner's name (Danny Silver) and, (6) included the practitioner's signature. **Attachment E,** ███████. For items (3) and (4) specifically, this order included two wound coverings: ████████████████

████████████████████████████████████████████ █ ████

████████████████████████████████████████████ The supplies were reasonable and necessary pursuant to LCD 33831 given ████████████████████ The documentation also reflects all three items shipped through third party delivery (Cardinal Health at-Home) and proof of delivery on ███████████, via FedEx directly to the beneficiary. **Attachment E,** ███████████. The supplies were properly documented on the HCFA 1500 claim form and the appropriate modifier (A1) was used since the dressings applied to ████████████.[10] **Attachment E,** ███████████.

**Claim No.** ████████7000

On April 23, 2020, Michael King, NP ordered ████████████ ████████. On the date of service, █████████ presented with a █████████████████████ ███████████. **Attachment E,** █████████████████, ████ further noted ████████████████ ██████████. *Id.* ████████████

█████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. This debridement resulted in a qualifying non-healing wound pursuant to the coverage requirements in LCD L33831.

Mr. King then ordered the requisite surgical dressings to treat the wound via a SWO. This SWO set forth (1) the beneficiary's name (███████████), (2) order date (███████), (3) general description of items, (4) quantity to be dispensed, (5) the practitioner's name (Michael King), and (6) included the practitioner's signature. **Attachment E,** ███████████. For items (3) and (4) specifically, the order included two wound coverings: █████████████████████

█████████████████████████████████ █ ████ █ ████████

█████████████████████████████████████████ The supplies were reasonable and necessary pursuant to LCD 33831 given █████████████████████ ██████████████. The documentation also reflects all three items shipped through third party delivery (Cardinal Health at-Home) and proof of delivery on ███████████ ████, via FedEx directly to the beneficiary. **Attachment E,** ███████████████. The supplies were properly documented on the HCFA 1500 claim form, and the appropriate modifier (A1) was used since the dressings applied to only one wound.[11] **Attachment E,** ███████████.

---

[10] *See* LCA A54563.
[11] *See* LCA A54563.

**Liles Parker PLLC ● 2121 Wisconsin Ave. NW ● Suite 200 ● Washington, DC 20007**

Rebuttal Statement
March 1, 2023
Page 8 of 8

      **c.**    **Curitec HQ's Documentation was Sufficient to Support the Services Rendered Exclusive of a Captive Audience.**

Qlarant indicates that Curitec HQ engaged in captive audience billing. However, Qlarant did not provide the underlying data or an explanation. Curitec HQ requested this information under a FOIA request dated February 10, 2023, and reiterates its request for prompt transmission of this information.

Curitec HQ is simply a DME supplier engaged in fulfilling orders that are delivered to patients via an acceptable method.[12] Curitec HQ drop ships all orders through Cardinal Health at Home, which is integrated with its Home Medical Equipment (HME)/DME software to ensure that the appropriate items are shipped and billed. As noted *supra*, Curitec HQ supplied surgical dressings for wound care that was medically reasonable and necessary and in response to a qualifying wound. Patients that reside in nursing homes tend to be less mobile, which can result in ulcers, much like the ulcers discussed above in the five sample claims. The mere fact that these patients resided in nursing homes does not disqualify their wounds or mean that the DMEPOS items supplied were not medically reasonable and necessary or otherwise did not meet the coverage requirements.

**III.**    **Conclusion:**

As shown above, each of the five sample claims cited by Qlarant qualify for coverage and payment. Qlarant's assertions that the services were not medically necessary, that the wound was not a "qualifying wound," ___**OR**___ that that documentation submitted was insufficient are completely without merit.

Based on the facts and the evidence in this case, Curitec HQ respectfully requests that CMS immediately lift the suspension of its Medicare payments and otherwise provide the immediate resumption of payments in light of the information provided in this rebuttal statement and the accompanying attachments and that it acts with urgency in light of the adverse impact on Medicare beneficiaries and Curitec. Absent immediate payment resumption, Curitec will be compelled to seek emergency judicial intervention

Should additional information be needed, please feel free to contact the undersigned attorney at (202) 298-8750.

                        Respectfully Submitted,

                        *Ashley H. Morgan*

                        **Ashley Morgan**
                        **LILES PARKER PLLC**
                        **Counsel for Curitec, LLC d/b/a Curitec HQ**

Encl. Attachments A-F

---

[12] As noted *supra*, an acceptable method of delivery is to deliver DME supplies to a nursing facility on behalf of a beneficiary.

**Attachment A**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

Form CMS-1696 Approved
OMB No. 0938-0950

## APPOINTMENT OF REPRESENTATIVE

| Name of Party | Medicare Number (beneficiary as party) or National Provider Identifier (provider or supplier as party) |
|---|---|
| **Curitec, LLC, dba Curitec HQ** | ██████████████████ |

### Section 1: Appointment of Representative

**To be completed by the party seeking representation (i.e., the Medicare beneficiary, the provider or the supplier):**

I appoint the individual named in Section 2 to act as my representative in connection with my claim or asserted right under Title XVIII of the Social Security Act (the "Act") and related provisions of Title XI of the Act. I authorize this individual to make any request; to present or to elicit evidence; to obtain appeals information; and to receive any notice in connection with my claim, appeal, grievance or request wholly in my stead. I understand that personal medical information related to my request may be disclosed to the representative indicated below.

| Signature of Party Seeking Representation | Date 02/10/23 |
|---|---|
| Street Address 24 Waterway Avenue, Ste. 755 | Phone Number (with Area Code) 832-662-4325 |

| City The Woodlands | State TX | Zip Code 77380 |
|---|---|---|

| Email Address (optional) nick.percival@curitec.com | Fax Number (optional) 949-767-5841 |
|---|---|

### Section 2: Acceptance of Appointment

**To be completed by the representative:**

I, Ashley Morgan and Robert Saltafor , hereby accept the above appointment. I certify that I have not been disqualified, suspended, or prohibited from practice before the Department of Health and Human Services (HHS); that I am not, as a current or former employee of the United States, disqualified from acting as the party's representative; and that I recognize that any fee may be subject to review and approval by the Secretary.

I am a / an  Attorneys with Liles Parker PLLC
(Professional status or relationship to the party, e.g. attorney, relative, etc.)

| Signature of Representative  Ashley Morgan    Robert Saltaformaggio | Date 02/09/2023 |
|---|---|
| Street Address 2121 Wisconsin Ave NW, Suite 200 | Phone Number (with Area Code) 202-298-8750 |

| City Washington | State DC | Zip Code 20007 |
|---|---|---|

| Email Address (optional) | Fax Number (optional) |
|---|---|

### Section 3: Waiver of Fee for Representation

**Instructions: This section must be completed if the representative is required to, or chooses to, waive their fee for representation.** (Note that providers or suppliers that are representing a beneficiary and furnished the items or services may not charge a fee for representation and **must** complete this section.)

I waive my right to charge and collect a fee for representing _____ before the Secretary of HHS.

| Signature | Date |
|---|---|

### Section 4: Waiver of Payment for Items or Services at Issue

**Instructions: Providers or suppliers serving as a representative for a beneficiary to whom they provided items or services must complete this section if the appeal involves a question of liability under section 1879(a)(2) of the Act.** (Section 1879(a)(2) generally addresses whether a provider/supplier or beneficiary did not know, or could not reasonably be expected to know, that the items or services at issue would not be covered by Medicare.)

I waive my right to collect payment from the beneficiary for the items or services at issue in this appeal if a determination of liability under §1879(a)(2) of the Act is at issue.

| Signature | Date |
|---|---|

Form CMS-1696 (Rev 09/21)

1

**Attachment A**

# INSTRUCTIONS AND REGULATION REQUIREMENTS

**Instructions**

Name of Party (required): This is the name of the person or entity which has standing to file a claim or appeal (the name of the person who has Medicare, or the name of the provider or supplier).

Medicare Number or National Provider Identifier (required): This must be completed when the person or entity appointing a representative has a Medicare number or National Provider Identifier. If not applicable, fill in, "not applicable".

All fields in Sections 1 and 2 are required unless noted as optional within the field. See the regulation at 42 CFR 405.910.

**Charging of Fees for Representing Beneficiaries before the Secretary of HHS**

An attorney, or other representative for a beneficiary, who wishes to charge a fee for services rendered in connection with an appeal before the Secretary of HHS (i.e., an Administrative Law Judge (ALJ) hearing or attorney adjudicator review by the Office of Medicare Hearings and Appeals (OMHA), Medicare Appeals Council review, or a proceeding before OMHA or the Medicare Appeals Council as a result of a remand from federal district court) is required to obtain approval of the fee in accordance with 42 CFR 405.910(f).

The form, OMHA-118, "Petition to Obtain Approval of a Fee for Representing a Beneficiary" elicits the information required for a fee petition. It should be completed by the representative and filed with the request for ALJ hearing, OMHA review, or request for Medicare Appeals Council review. Approval of a representative's fee is not required if: (1) the appellant being represented is a provider or supplier; (2) the fee is for services rendered in an official capacity such as that of legal guardian, committee, or similar court appointed representative and the court has approved the fee in question; (3) the fee is for representation of a beneficiary in a proceeding in federal district court; or (4) the fee is for representation of a beneficiary in a redetermination or reconsideration. If the representative wishes to waive a fee, he or she may do so. The form, OMHA-118, may be found at: https://www.hhs.gov/sites/default/files/OMHA-118.pdf

**Approval of Fee**

The requirement for the approval of fees ensures that a representative will receive fair value for the services performed before HHS on behalf of a beneficiary, and provides the beneficiary with a measure of security that the fees are determined to be reasonable. In approving a requested fee, OMHA or Medicare Appeals Council will consider the nature and type of services rendered, the complexity of the case, the level of skill and competence required in rendition of the services, the amount of time spent on the case, the results achieved, the level of administrative review to which the representative carried the appeal and the amount of the fee requested by the representative.

**Conflict of Interest**

Sections 203, 205 and 207 of Title XVIII of the United States Code make it a criminal offense for certain officers, employees and former officers and employees of the United States to render certain services in matters affecting the Government or to aid or assist in the prosecution of claims against the United States. Individuals with a conflict of interest are excluded from being representatives of beneficiaries before HHS.

**Where to Send This Form**

Send this form to the same location where you are sending (or have already sent) your: appeal if you are filing an appeal, grievance or complaint if you are filing a grievance or complaint, or an initial determination or decision if you are requesting an initial determination or decision. If additional help is needed, contact 1-800-MEDICARE (1-800-633-4227, TTY users call 1-877-486-2048), or your Medicare plan.

You have the right to get Medicare information in an accessible format, like large print, Braille, or audio. You also have the right to file a complaint if you feel you've been discriminated against. Visit https://www.medicare.gov/about-us/accessibility-nondiscrimination-notice, or call 1-800-MEDICARE (1-800-633-4227) for more information. TTY users can call 1-877-486-2048.

---

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-0950. The time required to prepare and distribute this collection is 15 minutes per notice, including the time to select the preprinted form, complete it and deliver it to the beneficiary. If you have comments concerning the accuracy of the time estimates or suggestions for improving this form, please write to CMS, PRA Clearance Officer, 7500 Security Boulevard, Baltimore, Maryland 21244-1850.

**Attachment B**



Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

February 8, 2023

Curitec, LLC, dba Curitec HQ
24 Waterway Avenue, Ste. 755
The Woodlands, Texas 77380

Re:    **Notice of Suspension of Medicare Payments**
        **Provider/Supplier Medicare ID Number(s):** ▮▮▮▮▮▮
        **Provider/Supplier NPI:** ▮▮▮▮▮▮▮▮▮
        **Record Identifier:** ▮▮▮▮▮▮▮▮▮

Dear Curitec, LLC, dba Curitec HQ:

The purpose of this letter is to notify you of our determination to suspend your Medicare payments pursuant to 42 C.F.R. § 405.371(a)(2). The suspension of your Medicare payments took effect on February 7, 2023. Prior notice of this suspension was not provided, because giving prior notice would place additional Medicare funds at risk and hinder our ability to recover any determined overpayment. *See* 42 C.F.R. § 405.372(a)(3)and (4).

The Centers for Medicare & Medicaid Services (CMS) through its Central Office made the decision to suspend your Medicare payments. *See* 42 C.F.R. § 405.372(a)(4)(iii). This suspension is based on credible allegations of fraud. *See* 42 C.F.R. § 405.371(a)(2). CMS regulations define credible allegations of fraud as an allegation from any source including, but not limited to, fraud hotline complaints, claims data mining, patterns identified through audits, civil false claims cases, and law enforcement investigations. *See* 42 C.F.R. § 405.370(a). Allegations are considered credible when they have indicia of reliability. *See* 42 C.F.R. § 405.370. This suspension may last until resolution of the investigation as defined under 42 C.F.R. § 405.370 and may be extended under certain circumstances. *See* 42 C.F.R. § 405.372(d)(3)

Specifically, the suspension of your Medicare payments is based on, but not limited to, information that you misrepresented services billed to the Medicare program. More particularly, Curitec HQ billed for services that were not rendered or not rendered as billed, and captive audience billing (rendering supplies to beneficiaries in the same location such as a nursing facility). The following list of sample claims provide evidence of our findings and serve as a basis for the determination to suspend your Medicare payments:

| Claim Control Number (CCN) | Basis for Selected Claims | Date(s) of Service | Amount Paid |
|---|---|---|---|
| ▮▮▮▮0000 | The documentation did not support that the wounds met the criteria for a qualifying wound as per Local Coverage Article. | 12/21/2020 | $817.19 |
| ▮▮▮▮0000 | The documentation did not support that the | 01/22/2020 | $427.87 |



**Qlarant**   14643 Dallas Parkway, Suite 400 • Dallas, Texas 75254-1613 • www.qlarant.com

**Attachment B**



Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

| | | | | |
|---|---|---|---|---|
| | | wounds met the criteria for a qualifying wound as per Local Coverage Article. | | |
| ▉▉▉▉6000 | | The documentation did not support that the wounds met the criteria for a qualifying wound as per Local Coverage Article. | 02/12/2020 | $651.08 |
| ▉▉▉▉0000 | | The documentation did not support that the wounds met the criteria for a qualifying wound as per Local Coverage Article. | 01/03/2020 | $2,167.96 |
| ▉▉▉▉7000 | | The documentation did not support that the wounds met the criteria for a qualifying wound as per Local Coverage Article. | 04/24/2020 | $696.14 |

This list is not exhaustive or complete in any sense, as the investigation into this matter is continuing. The information is provided by way of example in order to furnish you with adequate notice of the basis for this payment suspension noticed herein.

Pursuant to 42 C.F.R. § 405.372(b)(2), you have the right to submit a rebuttal statement in writing to us indicating why you believe the suspension should be removed. If you opt to do so, we request that you submit this rebuttal statement to us within 15 days of receipt of this notice, and you may include with this statement any evidence you believe supports your reasons why the suspension should be removed. If you choose to submit a rebuttal statement, your rebuttal statement and any pertinent evidence should be sent to:

Qlarant Integrity Solutions, LLC
Attn: Rebuttal and Suspension Department
14643 Dallas Parkway, Suite 400
Dallas, TX 75254

If you submit a rebuttal statement, we will review that statement (and any supporting documentation) along with other materials associated with the case. Based on a careful review of the information you submit and all other relevant information known to us, we will determine whether the suspension should be removed, or should remain in effect within 15 days of receipt of the complete rebuttal package, consistent with 42 C.F.R. § 405.375. However, the suspension of your Medicare funds will continue while your rebuttal package is being reviewed. *See* 42 C.F.R. § 405.375(a). Thereafter, we will notify you in writing of our determination to continue or remove the suspension and provide specific findings on the conditions upon which the suspension may be continued or removed, as well as an explanatory statement of the determination. *See* 42 C.F.R. § 405.375(b)(2). This determination is not an initial determination and is not appealable. *See* 42 C.F.R. § 405.375(c).

If the suspension is continued, we will review additional evidence during the suspension period to determine whether claims are payable and/or whether an overpayment exists and, if so, the amount of the overpayment. *See* 42 C.F.R. § 405.372(c). We may need to contact you with specific requests for further information. You will be informed of developments and will be promptly notified of any overpayment determination(s). Claims will continue to be processed during the suspension period, and

**Attachment B**



Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

you will be notified about bill/claim determinations, including appeal rights regarding any bills/claims that are denied. The payment suspension also applies to claims in process.

In the event that an overpayment is determined and it is determined that a recoupment of payments under 42 C.F.R. § 405.371(a)(3) should be put into effect, you will receive a separate written notice of the intention to recoup and the reasons. Please be advised that CMS may charge interest on the amount of the overpayment, consistent with 42 C.F.R. § 405.378. In the written notice alerting you to the overpayment, you will be given an opportunity for rebuttal in accordance with 42 C.F.R. § 405.374 from CGS Administrators. When the payment suspension has been removed, any money withheld as a result of the payment suspension shall be applied first to reduce or eliminate any determined overpayment by CMS or the Medicare Administrative Contractor (MAC) including any interest assessed under 42 C.F.R. § 405.378, and then to reduce any other obligation to CMS or to the U.S. Department of Health and Human Services (HHS) in accordance with 42 C.F.R. § 405.372(e). In the absence of a legal requirement that the excess be paid to another entity, the excess will be released to you.

Finally, Qlarant, a CMS Unified Program Integrity Contractor (UPIC), has initiated a process to review your Medicare claims and supporting documentation prior to payment. The purpose of implementing this prepayment process is to ensure that all payments made by the Medicare program are appropriate and consistent with Medicare rules, regulations and policy. The prepayment process is often applied to safeguard Medicare from unnecessary expenditures and to ensure that Medicare payments are made for items and services which are "reasonable and necessary" for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. *See* 42 U.S.C. § 1395y(a)(1)(A). Notification is hereby given that you are expected to comply with the prepayment process for claims for all dates and services.

Should you have any questions regarding the status of the suspension, please direct your inquiry to **ProviderSuspensionSW@Qlarant.com**. Any request to remove the suspension must be submitted through the rebuttal process described above.

Sincerely,

UPIC South Western Administration
Qlarant Integrity Solutions, LLC

cc: Centers for Medicare & Medicaid Services



**Attachment C**

| | |
|---|---|
| **From:** | Allison Burd |
| **To:** | Ashley Morgan |
| **Cc:** | Robert Saltaformaggio |
| **Subject:** | RE: Availability for a Call - Curitec |
| **Date:** | Friday, February 17, 2023 3:05:05 PM |

CAUTION: This email originated from outside of Organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi, Ashley,

CMS approved your request for a 15-day extension to submit a rebuttal on behalf of Curitec, LLC. The rebuttal is now due on or before March 9, 2023.

Hope you have a good weekend.

Allison

---

**From:** Ashley Morgan <AMorgan@LilesParker.com>
**Sent:** Friday, February 17, 2023 9:46 AM
**To:** Allison Burd <aburd@chaseconsulting.net>
**Cc:** Robert Saltaformaggio <rsalt@LilesParker.com>
**Subject:** Availability for a Call - Curitec

Hi Allison,

I hope your day is off to a good start. I wanted to see if you had any time for a brief call today regarding the suspension notice issued to Curitec, LLC. I also wanted to request a 15-day extension to file the rebuttal.

Thank you,
Ashley

Ashley H. Morgan
Partner
Liles Parker PLLC
2121 Wisconsin Ave. NW, Suite 200 | Washington, DC 20007
Direct: (202) 750-4420
Office: (202) 298-8750
Fax: (210) 745-4645

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. Thank you.

**Attachment D**



Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

Delivery Method: Federal Express

July 18, 2022

Curitec, LLC, dba Curitec HQ
24 Waterway Avenue, Ste. 755
The Woodlands, Texas 77380

Re: Medical Review Records Request
Supplier Number: PIN – 7718580001 / NPI – 1710452701
Internal Tracking Number: CSE-220324-00011/MR

Dear Curitec, LLC, dba Curitec HQ:

This letter is to inform you that Qlarant Integrity Solutions, LLC ("Qlarant") will be conducting a review of selected claims you have submitted to Medicare and/or Medicaid. In order to fulfill its contractual obligation with the Centers for Medicare & Medicaid Services (CMS), Qlarant, the Unified Program Integrity Contractor (UPIC) for the South Western Jurisdiction (Arkansas, Colorado, Louisiana, Mississippi, New Mexico, Oklahoma, and Texas), performs medical review for program integrity. As a UPIC, Qlarant is authorized by CMS to review any service provided in the South Western Jurisdiction and billed to Medicare or Medicaid.

We understand that our request for documentation, including patient records, may raise questions about the disclosure of protected health information. The Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule (45 CFR § 164.501-512) permits disclosure of protected health information without beneficiary authorization to carry out treatment, payment or health care operations. When Medicare beneficiaries enroll in the program, they are informed of Medicare's use of their protected health information to carry out health care operations, and the same is true for Medicaid beneficiaries enrolling in Medicaid. Unified Program Integrity Contractors, including Qlarant, perform health care operations as business associates of CMS with respect to the HIPAA Privacy Rule. Providing the requested documentation does not violate the minimum necessary provision of the HIPAA Privacy Rule and does not require beneficiary authorization.

Qlarant is authorized to reopen claims due to the rules cited in 42 CFR § 405.986. Good cause for reopening may be established when new and material evidence was not available or known at the time of the original determination or decision and may result in a different conclusion, or the evidence that was considered in making the determination or decision clearly shows on its face that an obvious error was made at the time of the determination or decision.



14643 Dallas Parkway, Suite 400 • Dallas, Texas 75254-1613 • www.qlarant.com

**Attachment D**



Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

For this review we have chosen specific claims from the universe of your claims. Included in the universe were only those beneficiaries for whom you were paid by Medicare or Medicaid. The chosen claims were selected from a set of claims that met specific criteria.

The attachment contains the list of beneficiaries and corresponding dates of service for which we are requesting medical records. Please provide us with the applicable medical records for each beneficiary on the attached list. To assist with processing of these medical records, please do not submit double sided copies, stapled or bound records.

The provider agreement to participate in the Medicare and/or Medicaid program requires you to submit all information necessary to support your claims for service. In this respect, if certain records supporting the services rendered are at another facility, as the billing provider you are responsible for obtaining those records for our review.

**Description of documentation requested:**

NOTE: The records we are requesting include any and all documentation to support the medical necessity of services billed for the specified dates of service on the attached list.

- Signed delivery slip(s).
- Signed pick up slip(s).
- Assignment of benefits.
- Physician order(s).
- Face to face evaluation.
- Therapy notes.
- Wound care assessment.
- Assessment notes.
- Correspondence to or from beneficiary.
- Photograph and/or detailed description of service.
- Servicing/repair records.
- Rent/purchase option.
- Supplier patient information forms.
- Detailed patient progress notes from the referring physician justifying the medical necessity for the durable medical equipment billed.
- Prior Authorization documents (if applicable).
- Advanced Beneficiary Notice (ABN) of non-covered services (if applicable).



14643 Dallas Parkway, Suite 400 • Dallas, Texas 75254-1613 • www.qlarant.com

**Attachment D**



Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

Failure to provide the requested documentation will result in a determination that an overpayment has been made. A referral will be made to the Supplier Audit and Compliance Unit with the National Supplier Clearinghouse for failing to meet Standard 21:

> **42 CFR § 424.57, Standard 21:  A supplier must agree to furnish CMS any information required by the Medicare statute and regulations.**

Non-compliance with this standard could result in your supplier/NPI number being inactivated or revoked.

The requested documentation should be submitted to the address below within 30 days of the date on this letter.

Requested information may be sent to Qlarant Integrity Solutions, LLC electronically (preferred) by esMD, Qlarant Secured Portal, or Mail (no drop off or hand deliveries).

- **ESMD:** Qlarant Integrity Solutions, LLC accepts requested documentation from providers via electronic submission of medical documentation by the esMD mechanism. Include a copy of this letter on the front of the requested documentation and submit via esMD. For more information about esMD, refer to www.CMS.gov/esMD
- **Qlarant Secured Portal:** If you prefer to submit records electronically and do not use esMD, you may contact us at 972-383-0000 and provide a contact person and email address. We will send them a link to a secure portal to upload records.

- **Mail:** Attach a copy of this letter to the front of the requested documentation and send by mail via hardcopy or password protected CD Send the password for the CD separately to ensure compliance with HIPAA regulations to:

  **Qlarant Integrity Solutions, LLC**
  **Attention: Medical Review Manager**
  **14643 Dallas Parkway Suite 400 Dallas,**
  **TX 75254**

**PLEASE NOTE THE FOLLOWING:**
**Please do not use a thumb drive, we cannot access information on a thumb drive.** We **cannot** accept this documentation by email. There are no exceptions. You must not send Protected Healthcare Information (PHI) by email because it would be in violation of federal HIPAA statutes.

If the requested documentation is not received within 30 days, the service(s) will be considered nonverifiable, which may result in:

- A determination that an overpayment has been made.



*14643 Dallas Parkway, Suite 400  •  Dallas, Texas 75254-1613  •  www.qlarant.com*

**Attachment D**



Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

- Any overpayment identified in a Statistically Valid Random Sample (SVRS) may be projected to the universe of claims processed during the time frame described above.
- A request for suspension of your Medicare payments in accordance with 42 C.F.R. § 405.371(a)(1).
- Revocation: Failure to comply with this medical records request could lead to revocation under 42 C.F.R. § 424.535(a)(10).
- A decision being made by the Office of Inspector General, DHHS, to exclude you and/or your organization from Medicare, Medicaid and all Federal health care programs in accordance with § 1128(b) (11) of the Social Security Act.

**Authorization for the release of the requested documentation is included in Sections 1815(a), 1833(e), and 1893 of the Social Security Act [42 U.S.C. 1395ddd], Item 6 of the Form CMS-1491 (SC) (01-89), and Item 12 of the Form CMS-1500 (12-90).**

Our clinical staff will review the documentation you submit for each of the claims, to determine if the services billed are reasonable and necessary in accordance with Section 1862(a)(1)(A) of the Social Security Act and meet all other requirements for Medicare and/or Medicaid coverage. Along with our claims payment determination, we will make a determination of liability decision for services that are subject to the provisions of § 1879 of the Social Security Act ("the Act") and a determination in accordance with § 1870 of the Act (as to whether you are without fault for any overpayments).

You will be informed of the review results in our Medical Review Findings Letter. We will include a list of all claims reviewed, and the specific reasons for any denial or re-coding of the claims. You will be provided with an explanation of how any overpayment amount was determined, the reason you are responsible for the incorrect payment, and the amount of the overpayment.

Thank you for your cooperation. If you have any questions I may be reached at (972) 383-0000, Monday through Friday, 8 a.m. to 4 p.m. CT.

Sincerely,

RN, BSN, CCA

Kelli Gannaway RN, BSN, CCA
Assistant Medical Review Manager



14643 Dallas Parkway, Suite 400  •  Dallas, Texas 75254-1613  •  www.qlarant.com

**Attachment D**



Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

Enclosure:    Beneficiary list
                Sample for Curitec, LLC, dba Curitec HQ - NPI 1710452701

cc: File

OMB#0938-0969



14643 Dallas Parkway, Suite 400 • Dallas, Texas 75254-1613 • www.qlarant.com

**Attachment D**



Unified Program Integrity Contractor
South Western Jurisdiction (UPICSW)

## Instructions for returning requested records

**First and preferred option:**
- **Qlarant Secured Portal**: You may call (972)-383-0000 and provide a contact person name and email address to request a secured portal link. A Qlarant representative will send you a link to the secure portal with instructions on how to upload records.

**Second option:**
- **esMD:** Qlarant Integrity Solutions, LLC accepts requested documentation from providers via electronic submission of medical documentation by the esMD mechanism. Include a copy of this letter on the front of the requested documentation and submit via esMD. For more information about esMD, refer to www.CMS.gov/esMD

**Final option:**
- **Mail:** Attach a copy of the letter to the front of the requested documentation and send by mail via hardcopy or password protected CD. Send the password for the CD separately (or call 972-383-0000 and provide the password) to ensure compliance with HIPAA regulations to:

> **Qlarant Integrity Solutions, LLC**
> **Attention:**
> > **Medical Review Manager (Medicare & Medi-Medi Records)**
> > **or**
> > **Lindsay Wheatley (Medicaid Records)**
> **14643 Dallas Parkway Suite 400**
> **Dallas, TX 75254**

**NEVER:**
- Please do not use a thumb drive
- Please do not submit records by email
- Please do not hand deliver records



14643 Dallas Parkway, Suite 400 • Dallas, Texas 75254-1613 • www.qlarant.com

**SUBSEQUENT PAGES REDACTED**